UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **DELOACH SPRAY FOAM INSULATION, LLC** | **CIVIL DOCKET NO. 1:19-CV-00572** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BRIGGS & STRATTON, CORP., ET AL** | **MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES** |

## MEMORANDUM RULING

Plaintiff, Deloach Spray Foam Insulation, LLC, ("Plaintiff") filed this lawsuit on March 22, 2019, in the 12th Judicial District Court, Avoyelles Parish, Louisiana. [Doc. 1-2, p. 1]. Plaintiff's petition asserted state law redhibition claims against three defendants: (i) Graco, Inc. ("Graco"); (ii) Southwest Air Equipment, Inc. ("Southwest"); and (iii) Briggs & Stratton Corporation ("Briggs & Stratton") (collectively "Defendants") stemming from Plaintiff's purchase of an allegedly defective "spray foam" trailer manufactured and sold by Defendants. Defendants subsequently removed the action to this Court on May 2, 2019, on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. [Doc. 1].

Two motions are now before the Court: (i) a MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Southwest; and (ii) a MOTION FOR SUMMARY JUDGMENT filed by Graco (collectively, the "Motions"). [Docs. 72, 73]. After careful consideration, and for the reasons set forth below, the Court DENIES Southwest's Motion to Dismiss and DENIES Graco's Motion for Summary Judgment.

**BACKGROUND**

I. <u>Facts</u>

Plaintiff is a Louisiana limited liability company owned by brothers Kelvin and Colin "Dart" Deloach. [Doc. 73-11, p. 3]; [Doc. 1-3, p. 4]. Plaintiff is in the insulation business and is hired by commercial builders to install "spray foam" insulation in buildings undergoing construction. [Doc. 73-11, pp. 3–5; Doc. 1-2, ¶4]. Since its inception in 2018, Plaintiff has performed work exclusively in Louisiana. [Doc. 73-10, p. 7]; [Doc. 1-2, ¶2].

Plaintiff's claims arise from the sale of a "Contractor Package" product ("the sale"), which consisted of a customized 16-foot-long cargo trailer retrofitted with various components designed for use in the spray foam industry. [Doc. 1-2, ¶¶3–4]; [Doc. 82-1, p. 1]. Plaintiff purchased the Contractor Package from Southwest, a Texas business specializing in items of this type. [Doc. 1-2, ¶2]; [Doc. 82-1, p. 3]; [Doc. 82-3, p. 3]. Although Southwest designed and manufactured the completed Contractor Package in its Fort Worth facility, Southwest assembled the finished product using component parts manufactured by Graco and Briggs & Stratton.[1]

Southwest delivered the Contractor Package to Plaintiff in Louisiana in March of 2018. [Doc. 1-2, ¶ 2]; [Doc. 72-1, p. 5].[2] Plaintiff claims that defects manifested in

---

[1] According to Graco's Motion for Summary Judgment, Graco manufactured "an E-30 Reactor® 2 spray foam proportioner . . . two T1 transfer pumps, a Fusion® AP spray gun, a ten-foot whip hose, and a fluid temperature sensor." [Doc. 73-1, p. 8]. Briggs & Stratton manufactured the engine powering the Contractor Package's Winco generator. *Id.* Notably, Plaintiff contracted exclusively with Southwest and, prior to the sale, did not interact with either Graco or Briggs & Stratton. [Doc. 73-10, p. 3].

[2] Prior to purchasing the Contractor Package, Plaintiff did not have any experience in the spray foam industry. [Doc 82-2, p. 3]. Accordingly, as a part of its sale obligations, two

various parts of the Contractor Package soon thereafter. [Doc. 1-2, ¶9]; [Doc. 82-5, p. 8].[3] Although Southwest attempted to repair the Contractor Package using replacement parts provided by Graco and Briggs & Stratton, Plaintiff alleges that its problems with the Contractor Package persisted for nearly a year. [Doc. 82-5, p. 8].

## II. <u>Procedural History</u>

On March 22, 2019, Plaintiff filed redhibition claims against Southwest, Graco, and Briggs & Stratton in Louisiana state district court. [Doc. 1-2, p. 1]. Among other forms of relief, Plaintiff's state court petition sought: (i) rescission of the sale; (ii) return of the purchase price and interest from the date of the sale; (iii) reimbursement for preservation, repair, and insurance expenses; and (iv) lost profits caused by "[forced] downtime and the inability of the 'contractor package' to function in the intended manner as spray foam insulation equipment[.]" *Id.* at ¶ 21. Defendants removed the case to this Court on May 2, 2019. [Docs. 1, 32].[4]

Graco and Southwest filed the instant Motions on October 3, 2022. [Doc. 72]; [Doc. 73]. In essence, Graco and Southwest assert in their respective Motions that Plaintiff's claims are governed by the sales law of Texas, not Louisiana, and that

---

Southwest employees remained in Louisiana after delivery and instructed Plaintiff as to the proper operation of the Contractor Package. [Doc. 72-1, p. 2]; [Doc. 82-1, p. 3].

[3]    In its opposition to the Motions, Plaintiff included a timeline cataloguing the defects it allegedly experienced with the Contractor Package. *See* [Doc. 82-5]. Most of these alleged defects involved the Contractor Package's generator, pump, and hose sensors. *See generally id.*

[4]    Briggs & Stratton filed for bankruptcy on July 20, 2020. [Doc. 31-2]. Accordingly, with the consent of all parties, this Court dismissed Briggs & Stratton without prejudice on September 28, 2020. [Doc. 40].

under Texas law Plaintiff's claims must be dismissed.[5] Plaintiff opposes both Motions. [Docs. 82, 83]. The Motions are now ripe for ruling.

## LAW & ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings in conjunction with affidavits and documentary evidence, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the movant fails to meet this burden, a court must deny the moving party's motion for summary judgment. *Id.*

If the movant satisfies its burden, however, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing

---

[5] Graco also argues in the alternative that, "even if the Court applies Louisiana law to Deloach's claims against Graco, Deloach's suit still must be dismissed for multiple independent reasons." [Doc. 73-1, p. 9].

*Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Id.*[6]

## II. Conflicts of Law

Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they sit. *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 485 (5th Cir. 2001). Accordingly, Book IV of the Louisiana Civil Code determines whether Texas or Louisiana law applies to Plaintiff's claims. *Id.* Book IV requires a "fact

---

[6] Plaintiff has attached evidence outside the pleadings to its Memorandum in Opposition, arguing that Southwest's Motion to Dismiss under Rule 12(c) should be considered as a Motion for Summary Judgment because it "adopts and incorporates by reference" several of Graco's arguments. [Doc. 82, p. 4]. The Court agrees.

When ruling on a motion to dismiss under Rule 12, a court may consider extrinsic evidence attached to an opposition when "the documents are referred to in the pleadings and are central to a plaintiff's claims." *Jesse Kevin Duplechain, M.D., (II) v. State Farm Fire & Cas. Co.*, 2022 WL 910868, at *2 (W.D. La. Mar. 28, 2022). Moreover, by seeking relief under Texas law, Southwest's Motion raises an inherently "fact intensive" matter more than three years after Plaintiff initiated proceedings in state court. *See Nelson Radiology Assocs., L.L.C. v. Integrity Med. Sys., Inc.*, 2008-0443, p.12 (La. App. 4 Cir. 7/29/09), 16 So. 3d 1197, 1206. Given that extensive discovery has taken place, and given that Southwest has raised identical choice-of-law issues contemporaneously with Graco's Motion for Summary Judgment, the Court finds it appropriate to address Southwest's arguments with an eye to the whole record. *See* Fed. R. Civ. P. 12(b) advisory committee's note to 1946 amendment ("The Committee entertains the view that on motion under Rule 12(b)(6) to dismiss for failure of the complaint to state a good claim, the trial court should have authority to permit the introduction of extraneous matter, such as may be offered on a motion for summary judgment, and if it does not exclude such matter the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in Rule 56 relating to summary judgments[.];" *see also* Fed. R. Civ. P. 12(c) advisory committee's note to 1946 amendment ("The [amendments to Rule 12(c)] perform[] the same function and [are] grounded on the same reasons as the corresponding sentence added in subdivision (b).").

intensive" and "extensive" analysis that necessitates the consideration of various choice-of-law principles. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 370 (E.D. La. 1997); *Nelson Radiology Assocs., L.L.C. v. Integrity Med. Sys., Inc.*, 2008-0443, p. 12 (La App. 4 Cir. 7/29/09), 16 So. 3d 1197, 1206. Where the result would be the same under either state's law, a conflicts analysis is unnecessary and Louisiana law governs by default. *Partin v. Dolby*, 652 So. 2d 670, 675 (La. App. 1st Cir. 1995).[7]

Redhibition actions are contractual in nature. *Diaz v. Goodyear Tire & Rubber Co.*, 2008 WL 4528186, at *5 (M.D. La. Oct. 1, 2008) ("The redhibition cause of action does not 'sound in damages *ex delicto*.'") (citing S*cruggs v. Minton Equipment, Inc.*, 1998–987 (La.App. 3 Cir. 12/9/98), 722 So.2d 130). As a result, if a conflicts analysis is necessary, La. C.C. arts. 3515 and 3537 govern Plaintiff's claims against both Graco and Southwest. *See, e.g.*, *PHI, Inc. v. Apical Industries, Inc.*, 2021 WL 67726, at *10 (W.D. La. Jan. 7, 2021); *Skansi Marine, LLC v. Ameron Intern. Corp.*, 2003 WL 22852221, at *4 (E.D. La. Dec. 1, 2003).[8]

---

[7] *See also Nelson Radiology Assocs., L.L.C. v. Integrity Med. Sys., Inc., 2*008-0443, p. 10 (La. App. 4 Cir. 7/29/09), 16 So. 3d 1197, 1204; *Arabie v. CITGO Petroleum Corp.*, 89 So. 3d 307, 327 (La. 2012) (Knoll, J., concurring) ("If the governing law of each jurisdiction is identical, or so similar that the same result would be reached under either law, there is a 'false conflict' and, thus, no need to determine which state's law applies.").

[8] Book IV also contains "[m]ore specific, cause-of-action-oriented[] code articles" that govern discrete contractual choice-of-law issues. *In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360, 370 (E.D. La. 1997). However, because those articles are inapplicable here, issues relating to Plaintiff's redhibition claims must be assessed using La. C.C. arts. 3515 and 3537. *See Kennedy v. Braskem Am., Inc.,* 2021 WL 1436498, at *11 (E.D. La. Mar. 31, 2021)*, aff'd,* 859 Fed. Appx. 722 (5th Cir. 2021) (unpublished); La. C.C. arts. 3538–40 (addressing conflicts relating to form, capacity, and party autonomy); *but see* La. C.C. art.

A conflicts analysis under La. C.C. arts. 3515 and 3537 first requires a consideration of the applicable policies underlying the laws of the relevant states. *Liberty Mut. Ins. Co. v. Zurich American Ins. Co.*, 2007 WL 3487651, at *2–3 (E.D. La. Nov. 13, 2007); *see also* La. C.C. art. 3537, cmt. (d) ("[T]he first step of the process is to identify 'the relevant policies of the involved states.'"). Next, a court must weigh the "strength and pertinence" of those policies in light of: (i) the factual contacts each state has to parties and the transaction; (ii) the "nature, type, and purpose of the contract;" and (iii) the policies enumerated by Article 3515, as well as the policies of "facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other." *Id.* (citing La. C.C. arts. 3515 and 3537).[9]

At bottom, a court must determine which state's policies "would be most seriously impaired" if its law were not applied to the issue at hand. La. C.C. arts. 3515 and 3537. This assessment "should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision on each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of others." *R-Square Invs., Inc. v. Teledyne*

---

3537, cmt. (c) ("[Articles 3537 and 3515] and the comments accompanying them are intended to be read together.").

[9] In turn, La. C.C. art. 3515 requires a consideration of "the policies and needs of the interstate and international systems," including: (i) "upholding the justified expectations of the parties;" and (ii) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

*Indus., Inc.,* 1997 WL 436245, at *4 (E.D. La. July 31, 1997) (citing La. C.C. art. 3537, cmt. (c)).

### A. Plaintiff's Claims Against Southwest

#### i. Relevant Conflict

In Louisiana, the warranty against redhibitory defects is implied in every sale unless validly waived. *Johnson v. CHL Enterprises*, 115 F.Supp. 2d 723, 728 (W.D. La. 2000); *Modicue v. Prince of Peace Auto Sale, LLC*, 54,095, p.18 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, *reh'g denied* (Nov. 10, 2021), *writ denied*, 2021-01864 (La. 2/15/22).[10] Although the buyer may limit or exclude a redhibitory warranty, such a waiver must: (i) be written in clear and unambiguous terms; (ii) be contained in the contract; and (iii) either be brought to the attention of the buyer or explained to him. *Modicue v. Prince of Peace Auto Sale, LLC*, 54,095, p. 18 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, 1249, *reh'g denied* (Nov. 10, 2021), *writ denied*, 2021-01864 (La. 2/15/22). Southwest has not argued, nor does the record reflect, that Plaintiff validly waived its warranty against redhibitory defects. *See generally* [Doc. 72-1].

Though the warranty of redhibition does not exist under Texas law, the implied warranty of merchantability is that state's most analogous provision. *See* Tex. Bus. & Com. Code Ann. §§ 2.314, 2.315; *R-Square Invs., Inc. v. Teledyne Indus., Inc.,* 1997 WL 436245, at *2 (E.D. La. July 31, 1997); *Brookshire Bros. Holding, Inc. v. Total Containment, Inc.*, 2006 WL 8442782, at *5 (W.D. La. Aug. 31, 2006); *PHI, Inc. v.*

---

[10] A redhibitory defect is one that "renders the thing useless, or its use so inconvenient that it must be presumed that the buyer would not have bought the thing had he known of the defect." La. C.C. art. 2520.

*Apical Indus., Inc.*, 2021 WL 67726, at *4, *10 (W.D. La. Jan. 7, 2021). In Texas, when an express warranty is present alongside an implied warranty, both warranties "shall be construed as consistent with each other and as cumulative" if such a construction is reasonable. Tex. Bus. & Com. Code Ann. § 2.317. However, express warranties displace inconsistent implied warranties where both warranties "cover the same performance[.]" *Id.*; *Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.*, 938 F.3d 661, 671 (5th Cir. 2019) (citing *New Jersey Transit Corp. v. Harsco Corp.*, 497 F.3d 323, 329 (3rd Cir. 2007)).

Here, the terms of the agreement between Plaintiff and Southwest included an express warranty stating:

> "A manufacturer's factory warranty of up to one year is provided on all major equipment supplied in our SFI Rig. This excludes all parts that are considered to be wear parts (i.e. packing's [sic], seals, filters, screens, o-ring, ect. [sic]) . . . Southwest Air Equipment, Inc. warrants both the quality and workmanship of the trailer retrofit, electrical system, and air plumbing for one year from date of unit delivery."

[Doc 82-2, p. 3].[11]

Thus, because the agreement between Plaintiff and Southwest incorporates an inconsistent warranty "covering the same performance" as the warranty of merchantability, Plaintiff does not have an implied warranty claim under Texas law. *See Baker Hughes*, 936 F.3d, at 671–72. A conflicts analysis is therefore necessary.

---

[11] Southwest's express warranty is followed by a disclaimer providing that "[Southwest] neither make[s] nor impl[ies] any additional warranty above that provided by the manufacturer of the components [of the Contractor Package]." [Doc. 82-1, p. 3]. Plaintiff does not dispute that Southwest's express warranty and disclaimer constituted part of its contract with Southwest. *See generally* [Doc. 82].

### ii. Applicable Law

Under Louisiana law, "[t]he purpose of the redhibitory action is to protect buyers from latent defects undisclosed by corrupt dealers by restoring the status quo." *Minton v. Acosta,* 2021-1180, p. 4 (La. App. 1 Cir. 6/3/22), 343 So. 3d 721, 725 (citing *Aucoin v. S. Quality Homes, LLC,* 2007-1014 (La. 2/26/08), 984 So.2d 685, 691–92); *Bearly v. Brunswick Mercury Marine Div.,* 39,069, pp. 7–8 (La. App. 2 Cir. 10/27/04), 888 So. 2d 309, 314. Louisiana permits a waiver of the warranty of redhibition only where the waiver is "brought to the attention of the buyer or explained to him." *Modicue v. Prince of Peace Auto Sale*, LLC, 54,095, p. 18 (La. App. 2 Cir. 9/22/21), 328 So. 3d 1239, 1249, *reh'g denied* (Nov. 10, 2021), *writ denied*, 2021-01864 (La. 2/15/22). Under Texas law, the law of waiver stems from its adoption of Article 2 of the Uniform Commercial Code ("UCC") which was enacted, in large part, to facilitate uniformity with other states and the flow of interstate commerce. *R-Square Invs., Inc. v. Teledyne Indus., Inc.*, 1997 WL 436245, at *5 (E.D. La. July 31, 1997).

Here, Plaintiff is a Louisiana buyer that purchased a product for use exclusively in Louisiana. [Doc. 1-2, ¶¶ 3–4]. Pursuant to Plaintiff's specifications, Southwest, a Texas seller, manufactured the Contractor Package in Texas prior to delivering it to Plaintiff in Louisiana. [Doc 86, pp. 4–5]. The record indicates that the parties bargained, executed, and performed their respective obligations in both Louisiana and Texas.[12] Therefore, the "pertinent contacts" that each state has with

---

[12] Until Southwest delivered the Contractor Package to Plaintiff in Louisiana, the parties did not physically meet with one another to discuss matters relating to the sale. [Doc. 86, p. 5]. Nor was there a written document evidencing the terms of their contract, and all negotiations and agreements occurred either by text, phone, or email. *See* [Doc. 72-1, p. 2];

the parties and the transaction do not definitively favor either Texas or Louisiana.

Though both states bear a substantial relationship with this dispute, it is Louisiana's redhibitory defect doctrine that would be "most seriously impaired" if it were not applied to Plaintiff's claims against Southwest. As a general matter, Louisiana possesses a strong interest in "guaranteeing that innocent victims injured in Louisiana are fully compensated[.]" *Liberty Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 2007 WL 3487651, at *3 (E.D. La. Nov. 13, 2007) (citing *Champagne v. Ward*, 893 So.2d 773, 788 (La. 2005)). This interest is particularly acute where, as here, the alleged victim is a Louisiana citizen. *See VFS US LLC v. Vaczilla Trucking, LLC*, 2015 WL 7281619, at *8 (E.D. La. Nov. 16, 2015). Texas, of course, has legitimate policy concerns related to potential liability of Texas sellers, particularly when that potential liability arises from contractual obligations partially performed in Texas. *See Skansi Marine, LLC v. Ameron Intern. Corp.,* 2003 WL 22852221, at *8 (E.D. La. Dec. 1, 2003); *Liberty Mutual*, 2007 WL 3487651, at *3 ("[A state] has a legitimate

---

[Doc. 82-9]; [Doc. 86, p. 5]. The only terms reduced to writing appear in a quote that Southwest emailed to Plaintiff several weeks prior to the delivery of the Contractor Package. *See* [Doc. 82-1]. Thus, as described by Southwest, the sale of the Contractor Package "was not a single integrated instrument, but rather a series of offers, modifications to offers, and finally, acceptance." [Doc. 72-1, p. 2]. Southwest emphatically argues that, under these circumstances, the sale occurred *as a legal matter* in Texas on March 19, 2018. *Id.* at p. 5. However, in Louisiana, a sale occurs when "there is [an] agreement on the thing and the price is fixed, even [if] the thing sold is not yet delivered nor the price paid." La. C.C. art. 2456. For present purposes, given that both parties apparently agreed upon the price and object of the sale while physically located in their respective domiciles, the Court finds that Plaintiff and Southwest executed the sale of the Contractor Package in both Texas and Louisiana. *See Courtin v. Sharp,* 280 F.2d 345 (5th Cir. 1960) (upholding an oral sale that occurred via telephone); *A & L Energy, Inc. v. Pegasus Grp.,* 2000-3255, p. 8 (La. 6/29/01), 791 So. 2d 1266, 1273 (concluding that, for the purposes of personal jurisdiction, the contract at issue was executed in both Louisiana and California).

interest in regulating insurance policies executed in [that state], especially when an insurance policy [insures activity within that state].") (citing *Harrison v. R.R. Morrison & Son, Inc.,* 862 So.2d 1065, 1070 (La.App.2003)).

Nevertheless, the Court finds that Louisiana's interest outweighs that of Texas interest in this dispute. First, the relevant policies enumerated by La. C.C. arts. 3515 and 3537 support the application of Louisiana law. Southwest describes itself as a "Texas business that sells spray foam 'rigs' . . . to many customers from many different states." [Doc. 86, p. 4]. Plaintiff, on the other hand, was a new business with no experience in the spray foam industry. [Doc. 72-1, p. 2]; [Doc. 82-2, pp. 10–11]. Southwest was therefore in a better position to assess the consequences associated with a multistate transaction – an important factor under Louisiana conflicts law. *See* La. C.C. art. 3537, cmt. (g) (Article 3537's policy of "protecting one party from undue imposition by the other" implicated where contracting parties have unequal bargaining power). Moreover, although Plaintiff and Southwest negotiated and executed the sale across state lines, Southwest's performance necessitated considerable activity within Louisiana.[13] All told, given Louisiana's substantial

---

[13] After the sale, two Southwest employees delivered the Contractor Package directly to Plaintiff and, while still in Louisiana, spent at least a day instructing Plaintiff as to its proper operation. [Doc. 86, p. 5]; [Doc. 82-2, p. 10]. Ostensibly due to its express warranty, Southwest also performed extensive post-sale repairs in Louisiana. [Doc. 86, p. 6]. In its Reply Memorandum, Southwest argues that its post-sale contacts with Louisiana have no bearing on the question of which state's law applies to this dispute because "the claims asserted [by Plaintiff exclusively] relate to the existence of a warranty arising from a sale of property[.]" *Id.* at pp. 5–6. The Court disagrees. Although the primary purpose of the agreement between Southwest and Plaintiff was the sale of the Contractor Package, the terms of that agreement unequivocally contemplated substantial, post-sale performance in Louisiana. *See* [Doc. 82-1, p. 3]. Given the degree of performance undertaken by Southwest

relationship to the sale, Southwest should have reasonably anticipated the application of Louisiana law. *See Harrison v. R.R. Morrison & Son*, 37,992, pp. 7–8 (La. App. 2 Cir. 12/10/03), 862 So. 2d 1065, 1070, *writ denied,* 2004-0101 (La. 3/19/04), 869 So. 2d 857.

Louisiana also has an interest in regulating parties who "enter into contracts with Louisiana companies doing business in Louisiana." *Deloitte Tax LLP v. Amedisys, Inc.,* 2016-1380, p. 10 (La. App. 1 Cir. 5/16/18), *writ denied sub nom.* 2018-0993 (La. 10/8/18), 253 So. 3d 794. This is especially true where, as here, the allegedly defective product was both designed for a Louisiana citizen and for commercial activities expected to take place in Louisiana. *See R-Square Invs., Inc. v. Teledyne Indus., Inc.*, 1997 WL 436245, at *5, n.9 (E.D. La. July 31, 1997).[14] Lastly, and perhaps most importantly, Louisiana law provides redress for precisely this kind of injury to protect its citizens.[15] Accordingly, Southwest's Rule 12(c) Motion is denied.

---

– much of which was to occur in Louisiana – both parties should have reasonably anticipated the application of Louisiana law.

[14] Though not submitted as evidence by the parties, the Court requested and received a complete copy of the deposition of Darren Plowman, the Southwest sales representative who negotiated with Plaintiff prior to the sale. Mr. Plowman testified that, prior to selling the Contractor Package, he was aware of the fact that Plaintiff was a spray foam company located in Louisiana.

[15] In contracting with Plaintiff, Southwest has acted as both a seller and a manufacturer of the Contractor Package. *See Lovell v. Blazer Boats Inc.,* 2011-1666, p. 4 (La. App. 1 Cir. 10/24/12), 104 So. 3d 549, 554 ("A manufacturer is conclusively presumed to have knowledge of defects in the object it manufactures."). Louisiana has enacted redhibition laws that explicitly penalize a seller who also manufactures a defective product. *See* La. C.C. art 2540 ("When more than one thing are sold together as a whole so that the buyer would not have bought one thing without the other or others, a redhibitory defect in one of such things gives rise to redhibition for the whole."); *see also* La. C.C. art. 2545 ("A seller who knows that the thing he sells has a defect . . . [is liable for] the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable

B. **Plaintiff's Claims Against Graco**

i. **Relevant Conflict**

The Court must next determine the law applicable to Plaintiff's claims against Graco.[16] In Texas, where economic losses "arise [solely] from the failure of a product," a plaintiff's recovery against a manufacturer is "generally limited to remedies

---

attorney fees."); *id.*, cmt. (i) ("[T]he assembler of things manufactured by another is a seller in bad faith."); *id.,* cmt. (b) ("[A] manufacturer is presumed to know of the defects in the things it manufactures. In the words of Pothier, a manufacturer 'spondet peritiam artis,' that is, by exercising his trade he represents that he has the skill of one learned in his art, and he is for this reason presumed to know of the defects in the things he sells.") (citing Pothier, *Traité du contrat de vente* 126–28 (1806)). Thus, these facts present a situation that Louisiana's redhibition law is specifically tailored to address. Texas' warranty laws, on the other hand, are universally applicable to all sales, regardless of the role of the seller in the manufacturing process. *See generally* Tex. Bus. & Com. Code Ann. §§ 2.314, 2.316, 2.317. The policies underlying Louisiana's redhibition law relating to manufacturers therefore also favor applying Louisiana law. *See Norfolk S. Corp. v. California Union Ins. Co.*, 2002-0369, p. 15 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 181, *writ denied*, 2003-2742 (La.12/19/03), 861 So. 2d 579 (applying La. C.C. arts. 3537 and 3515 to an insurance contract and noting that states have a "compelling interest" in regulating "the contractual obligations that are inherent parts [of its law]"); *Draughn v. State Farm Insurance Company,* 2018 WL 360547, at *3, n.4 (La.App. 1 Cir., 2018) (finding that, when applying La. C.C. art. 3515 and 3537, a court should consider the extent to which an issue "implicate[s] [the] polices [sic]" of the involved states"); *Great Am. Ins. Co. of New York v. CIMA Companies, Inc*. 2010 WL 11541593, at *7 (E.D. La. Oct. 27, 2010) (considering factual contacts in light of their "pertinen[ce] to the resolution of the underlying dispute"); *VFS US LLC v. Vaczilla Trucking, LLC,* 2015 WL 7281619, at *10 (E.D. La. Nov. 16, 2015) (applying Louisiana law in part because "[t]he policies pointing towards North Carolina law *are those supporting choice of law clauses generally*, and are thus applicable in an abstract sense to every case involving a choice of law clause.") (emphasis added).

[16] The law governing Plaintiff's claim against Graco need not be the same as the law governing Plaintiff's claim against Southwest. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.,* 177 F.R.D. 360, 370–72 (E.D. La. 1997) ("[U]nder Louisiana's choice of law principles … the choice of law determination is a function of the individual defendant, plaintiff, and the circumstances of the claim."); *see also Dépeçage,* BLACK'S LAW DICTIONARY (11th ed. 2019) (dépeçage is "[a] court's application of different state laws to different issues in a legal dispute; choice of law on an issue-by-issue basis"); La. C.C. art. 3515, cmt. (d) ("This Article does not prohibit dépeçage. However, dépeçage should not be pursued for its own sake. The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.").

grounded in contract[.]" *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414–16 (Tex.2011) (describing the so-called "economic loss rule"). Accordingly, a buyer typically cannot assert an implied warranty claim against the manufacturer of a component part without contractual privity. *See Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 523 (N.D. Tex. 2019), *aff'd sub nom. Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804 (5th Cir. 2020) ("[Several Texas] courts have held that a plaintiff cannot recover for damage caused to a product as a whole by a component supplied by or to the original manufacturer for integration into the finished product."); *see also Helen of Troy, L.P. v. Zotos Corp.*, 511 F.Supp.2d 703, 724 (W.D. Tex. 2006) (holding that a plaintiff "should not be permitted to bring an implied warranty claim against [a non-privity manufacturer]" because the manufacturer "ha[s] no reasonable opportunity to disclaim its warranty liability" as to the plaintiff). Plaintiff thus lacks an implied warranty claim against Graco under Texas law.[17]

Under Louisiana law, however, a buyer may bring a redhibition claim against "all sellers in the chain of sales back to the primary manufacturer" regardless of the buyer's privity with an upstream party. *See Lovell v. Blazer Boats Inc.,* 2011-1666,

---

[17] The manuals accompanying the component parts that Graco sold to Southwest include a disclaimer stating, in bold, uppercase font, "THIS WARRANTY IS EXCLUSIVE, AND IS IN LIEU OF ANY OTHER WARRANTIES . . . INCLUDING BUT NOT LIMITED TO [the] WARRANTY OF MERCHANTABILITY[.]" *See* [Doc. 73-5, p. 69]; [Doc. 73-6, p. 28]; [Doc. 73-7, p. 48]. Under Texas law, this is sufficient to waive the warranty of merchantability. *See, e.g.*, *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 743–44 (5th Cir. 2009) (applying Tex. Bus. & Com. Code Ann. § 2.316); *Petrocon Eng'g v. MAC Equip., Inc.*, 62 F. App'x 557, at *2 (5th Cir. 2003); *Alcan Alum. Corp. v. BASF Corp.*, 133 F.Supp.2d 482, 498 (N.D.Tex.2001).

p. 4 (La. App. 1 Cir. 10/24/12), 104 So. 3d 549, 553, n.3 (citing La. C.C. art. 2545, cmt. (d)). Redhibition claims may also be brought by buyers against component part manufacturers. *See Sw. Louisiana Hosp Ass'n v. BASF Const. Chemicals, LLC,* 947 F. Supp. 2d 661, 683 (W.D. La. 2013), *amended* (Sept. 6, 2013) ("[I]t is clear that [plaintiff] may pursue a direct cause of action [for redhibition] against the manufacturer [of a component part]."); *accord, RTT Truck Repair, LLC v. Paccar, Inc.*, 2011 WL 86558, at *2 (W.D. La. Mar. 10, 2011).[18] A conflicts analysis is therefore necessary.

### ii. <u>Applicable Law</u>

As discussed above, redhibition is designed to "protect buyers from latent defects undisclosed by corrupt dealers by restoring the status quo." *Minton v. Acosta,* 2021-1180, p. 4 (La. App. 1 Cir. 6/3/22), 343 So. 3d 721, 725 (citing *Aucoin v. S. Quality*

---

[18] Graco cites to *Reeves v. Great Atl. & Pac. Tea Co.*, 370 So. 2d 202 (La. App. 3 Cir. 1979), *Pittman v. Kaiser Aluminum & Chem. Corp.*, 559 So. 2d 879 (La. App. 4 Cir. 1990), and *Brookshire Bros. Holding v. Total Containment, Inc.,* 2006 WL 8442782 (W.D. La. Aug. 31, 2006) in support of its argument that "a plaintiff cannot maintain an action in redhibition against the manufacturer of component parts of a final product." [Doc. 73-1, p. 29]. But in *Pitfield v. Dupont Family Playhouses,* 575 So.2d 817 (La.1991), the Louisiana Supreme Court "summarily reversed the [Louisiana] Fifth Circuit Court of Appeal when it concluded that the plaintiff had no cause of action against a component part manufacturer in redhibition." *See Howard Pardue/Pardue's Auto Repair, Inc. v. Cummins, Inc.,* 2009 WL 5171462, at *2, n.4 (E.D. La. Dec. 17, 2009). In short, although Graco argues correctly that *Reeves, Pittman,* and *Brookshire* did not extend redhibitory liability to a component part manufacturer, these cases have not been followed by Louisiana federal courts. *See, e.g.*, *425 Notre Dame, LLC v. Kolbe & Kolbe Mill Work Co.,* 151 F. Supp. 3d 715, 723 (E.D. La. 2015) ("[T]he manufacturer or seller of a component part may also be solidarily bound [in redhibition].") (citing *RTT Truck Repair, LLC v. Paccar, Inc.*, 2011 WL 865582, at *2 (W.D.La. March 10, 2011)); *Sw. Louisiana Hosp. Ass'n v. BASF Const. Chemicals, LLC*, 947 F. Supp. 2d 661, 683 (W.D. La. 2013), *amended* (Sept. 6, 2013) ("In both the Eastern District of Louisiana and the Western District of Louisiana, however, courts have rejected the *Pittman* argument that a component part manufacturer cannot be liable in a redhibition cause of action because of lack of vendor/vendee relationship.").

*Homes, LLC,* 2007-1014 (La. 2/26/08), 984 So.2d 685, 691–92). Conversely, the Texas economic-loss rule "[bars] parties without even remote contractual privity" from recovering economic-only damages unless "a defective product causes physical harm to the ultimate user or consumer or other property of the user or consumer[.]" *Barzoukas v. Found. Design, Ltd.*, 363 S.W.3d 829, 836 (Tex. App. 2012); *Lopez v. Huron*, 490 S.W.3d 517, 521 (Tex. App. 2016).

As to the agreement between Graco and Southwest, the factual contacts listed by La. C.C. art. 3537 favor Texas law. Graco is a Minnesota domiciliary that entered into a distribution contract with Southwest, a Texas corporation. [Doc. 73-2, pp. 1–2]. Pursuant to their agreement, Graco shipped component parts into Texas, which Southwest then incorporated into the Contractor Package before delivering the finished product to Plaintiff in Louisiana. [Doc. 1-2, ¶ 2]. In short, Louisiana has only two factual connections to the Graco-Southwest agreement: (i) the component parts manufactured and sold by Graco allegedly harmed a Louisiana plaintiff in Louisiana; and (ii) Southwest, the purchaser, faces potential liability under Louisiana law.

The Court finds that these factual contacts are sufficient to apply Louisiana law to Plaintiff's claims against Graco. *See* La. C.C. art. 3537, cmt. (c) ("[T]he search for the applicable law should not be a mechanical, quantitative process[.]"); *id.*, cmt. (e) ("The fact that one state has more contacts with the dispute than another state does not necessarily mean that the law of the first state should be applied to any or

all issues of the dispute[.]").[19] Critical to the Court's determination, the Louisiana Civil Code permits liability for redhibitory defects against both the seller and manufacturer(s). *See, e.g.*, La. C.C. art. 2531; La. C.C. art. 2545, cmt. (c) ("When the thing sold contains a redhibitory defect, the manufacturer and the seller are solidarily liable to the buyer for a return of the purchase price."); *id.,* cmt. (g) ("The trial court has discretion to allow the bad faith seller and the manufacturer a credit for the buyer's use of the thing if such a credit is warranted under the facts."). Applying Texas law to Plaintiff's claims against Graco would, consequently, put Southwest at risk of incurring liability under Louisiana law while precluding it from seeking contribution from its co-defendant that manufactured significant portions of the Contractor Package.[20] *See* La. C.C. art. 3515, cmt. (c) (a court must strive to

---

[19] The cases cited by Graco are inapposite. In these cases, courts concluded that Louisiana law did not govern claims against intermediate sellers and otherwise considered transactions bearing little-to-no factual connection with Louisiana. *See R-Square Invs., Inc. v. Teledyne Indus., Inc.*, 1997 WL 436245, at *5 (E.D. La. July 31, 1997) (applying Minnesota law because "[t]he object of the contract between Teledyne and [the distributor] was delivery of the rebuilt engine to [the distributor] in Minnesota. The object of the contract between [plaintiff] and [the distributor] was the installation of the engine into [plaintiff's] Bonanza, which was brought to Minnesota precisely for this purpose. Thus, *Minnesota was the location of the objects of both contracts and the place where [both] contracts were performed*.") (emphasis added); *Skansi Marine, LLC v. Ameron Int'l Corp.*, 2003 WL 22852221, at *5 (E.D. La. Dec. 1, 2003) (applying Alabama law because "[both] transactions actually took place in Alabama . . . the contracts were actually formed in Alabama . . . [and] for the most part, these transactions involved Alabama domiciliaries and sophisticated commercial entities domiciled in states foreign to Alabama."); *Tobin v. Springfield Freightliner, Inc.*, 2006 WL 1539783, at *2 (E.D. La. May 17, 2006) (applying Missouri law because Louisiana was merely "the [place of] plaintiff's residence and some of his negotiations [had] a Louisiana connection."); *LAS Enterprises, Inc. v. Accu-Sys.,* Inc., 2011 WL 6697043, at *8 (E.D. La. Dec. 20, 2011) (in the context of a motion to transfer, applying Utah law to plaintiff's redhibition claims because [a]ll actions associated with the design and manufacture of the machine took place in Utah.").

[20] Comparative fault principles do not apply to redhibition claims. *See Hanover Ins. Co. v. Plaquemines Par. Gov't,* 2015 WL 4167745, at *6 (E.D. La. July 9, 2015) ("In light of the distinction made in article 1804, it seems clear that the Legislature intended to create separate legal regimes governing the allocation of damages in contract and tort actions.").

"'minimiz[e] the adverse consequences that might follow from subjecting a party to the law of more than one state.'"); *id.,* cmt. (d) ("The unnecessary splitting of the case should be avoided, especially when it results in distorting the policies of the involved states.").[21] The Court therefore finds that Louisiana law should likewise apply to Plaintiff's claims against Graco.

Alternatively, Graco argues that Plaintiff's redhibition claims must be dismissed because, "Graco has produced an expert declaration that demonstrates that Deloach's problems with the Contractor Package stem from its own user error rather than from any defect in Graco's products." [Doc. 73-1, p. 28]. This, however, is a disputed fact central to the claims in this case and the subject declaration is currently subject to a pending motion *in limine. See* [Doc. 88, p. 1] (where Southwest argues

---

Rather, the Civil Code imposes solidary liability upon both the seller and manufacturer, meaning that Plaintiff could collect its entire damages award from either defendant. La. C.C. art. 2545, cmt. (c); La. C.C. art. 1794 ("An obligation is solidary for the obligors when each obligor is liable for the whole performance."). Because solidary liability in this case would obviously favor a Louisiana buyer, Louisiana has a keen interest in allowing Plaintiff to pursue redhibition claims against both Defendants. *See Gulf States Utilities Co. v. NEI Peebles Elec. Prod., Inc.,* 819 F. Supp. 538, 552 (M.D. La. 1993) (finding that redhibition governs where the allegedly defective product was "sold for use in Louisiana."). More important, however, is the fact that *as amongst solidary obligors*, "each [obligor] is liable for his virile portion." La. C.C. art. 1804. Relatedly, "[a] seller who is held liable for a redhibitory defect has an action against the manufacturer of the defective thing, if the defect existed at the time the thing was delivered by the manufacturer to the seller, for any loss the seller sustained because of the redhibition." La. C.C. art. 2531. Applying Texas law to Plaintiff's claims against Graco would thus preclude Southwest from seeking contribution.

[21] The Court notes that, standing alone, La. C.C. art. 3537's policy of "upholding the justified expectations of parties" supports applying Texas law to Plaintiff's claims against Graco because, "[a]ll other factors being equal," a party "should not be subjected to the law of a state they had no reason to anticipate would be applied to their case." La. C.C. art. 3537, cmt. (c). Here, however, there are compelling reasons to apply Louisiana law. Further, Graco is a sophisticated commercial entity that is authorized to do business in both Texas and Louisiana and its products are sold throughout the United States. [Doc. 1-2, pp. 42–53]; [Doc. 73-2, p. 1].

that "Graco's untimely disclosure of expert opinions and deposition of its expert was prejudicial to Southwest and should not be permitted."). Genuine disputes of material fact preclude summary judgment as to the merits of the Plaintiff's claims.

## CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that:

(i) Southwest's MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM [Doc. 72] is DENIED.

(ii) Graco's MOTION FOR SUMMARY JUDGMENT on Plaintiff's redhibition claims [Doc. 73] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 9th day of December 2022.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE